United States Court of Appeals for the Fourth Circuit. Oyez! Oyez! Oyez! All persons having any manner or form of business before the Honorable the United States Court of Appeals for the Fourth Circuit are admonished to draw an eye and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. All right. Mr. Braggart? Good morning, Judge Gregory. As Director of the Appellate Litigation Clinic at the University of Virginia School of Law, I would like to introduce this morning's third-year law student, Ross Powell, who satisfies the requirements of this court for student practice and who has the consent of our client to argue the appeal this morning. Glad to have you. Mr. Ross? Ross Powell, I should say. May it please the Court? Yes. I'm Ross Powell and I represent the Appellant Grayson Hare. This case is about the Federal rules. Specifically, should the District Court have ruled upon an affirmative defense raised in a 12B6 motion to dismiss? This Court has, again and again, in cases like Goodman v. Praxair, held that a court should only rule upon an affirmative defense raised in a 12B6 motion to dismiss and all of the facts present on the face of the complaint. There are insufficient facts on the face of Mr. Hare's complaint to establish the defense of res judicata upon which the District Court ruled. Just as in Devaney v. the Virginia Department of Transportation, we do not know what claims were raised in the prior litigation nor what issues were litigated there. Accordingly, we ask you to reverse the District Court and remand this case for discovery. Today, I will first discuss why the Goodman rule is not only mandated by the Federal rules but is also in the interest of procedural fairness. Second, I will discuss each of the affirmative defenses raised by the appellees and describe how the face of the complaint fails to establish these affirmative defenses. Finally, I will discuss the more traditional 12B6 arguments made by the appellees. Many of these arguments are being raised for the first time on appeal. When a court rules upon an affirmative defense that has been raised in a 12B6 motion, it deprives the plaintiff of the opportunity to pursue discovery and present facts in opposition to that affirmative defense. The purpose of a 12B6 motion is simply to test the sufficiency of the complaint. An affirmative defense, by contrast, does not challenge the sufficiency of the complaint. The affirmative defense here, res judicata? It is res judicata. The District Court's brief opinion appeared that he was relying on claim preclusion to Well, you've got this other action up here. I mean, it's a dispute here dealing with a State matter. You've got the probate matter up in Pennsylvania that's being litigated, and I understand the plaintiff in this matter was right there. The plaintiff was there, but there are many questions that remain about what was litigated in Pennsylvania and also what could have been litigated in Pennsylvania. For claim preclusion to apply, of course, the parties must be the same to litigation. The only party among the appellees that was party to the Pennsylvania litigation was Ms. Simpson. The claims also have to be the they also have to have the same cause of action. What was litigated in Pennsylvania was simply an accounting. Mr. Herr's claim is that the Sounds pretty simple to me. I mean, it would seem like a trial judge looking at this. What you're saying is basically the issues weren't the same, the parties weren't the same. Well, everybody knows that won't give you res judicata, but isn't there something more to this? I mean, there are some similarities between what happened there. There are some similarities, but the question that Mr. Herr's complaint basically boils down to, he believes that the power of attorney under which Ms. Simpson was exercising controlling her father's estate had been forged. And that claim was never heard in Pennsylvania Orphan's Court, and it might not have been able to be heard in the Pennsylvania Orphan's Court. All we have from that You're saying it might not have been able to be heard? Excuse my voice. Yes. Do you know whether it was able to be heard? Because wouldn't that bear into the analysis? Of course, it would bear into the analysis. The Pennsylvania Orphan's Court is a court of limited jurisdiction. It's sort of one of the rare equity courts remaining in this country. Mr. Herr's legal action, there are several concerns. First is that in this form, Ms. Simpson was the personal representative of the estate. To the extent that the forged power of attorney was a claim on behalf of the estate, only she would have been able to raise it. The Pennsylvania Orphan's Court might not also have been able to bring before it all the parties to this litigation. Mr. Herr's claims are not just against Ms. Simpson, but also against Mr. Malone, Ms. Chima, and Ms. Burns. The other thing is, it's not within the, it's almost certainly not within the mandatory jurisdiction of the Pennsylvania Orphan's Court. It might lie within its discretionary jurisdiction. At this stage of litigation, we should be drawing inferences in favor of Mr. Herr. And because there's no record that this claim was attempted to be heard or was actually heard, when we're dealing with something like discretionary jurisdiction, we're at the 26th stage, the inference should be drawn that this claim could not have been heard by the Pennsylvania Orphan's Court. But to clarify the issue a little bit, there are sort of two claims here. There's claim preclusion and issue preclusion. The appellees, I think, recognize that claim preclusion is not enough in order for them to defeat Mr. Herr's claims, and so they rely on issue preclusion. But issue preclusion is, of course, more narrow than claim preclusion. It requires. And the brief opinion of the district court, it's that he said res judicata. There is some language that the claims were barred by the Pennsylvania litigation, the inference being that he relied on claim preclusion. But, of course, in order to dismiss all the claims, issue preclusion would have to apply as well. And issue preclusion does require the claim to be actually litigated in the other form. And in this case, there's no evidence that there was actually full litigation or that Mr. Herr had a full and fair opportunity to litigate these claims in the Pennsylvania Orphan's Court. What capacity was Simpson appearing within that orphan's court? She appeared both as the personal representative of the state and then also the orphan's court took an accounting of her duties as power of attorney. But she was not in her personal capacity in the Pennsylvania Orphan's Court. She was in her capacity as the representative. Does that make a difference? It may make a difference in this case. The real problem is that because she was representing the state, Mr. Herr's claims, which are essentially torts on behalf of the state within the jurisdiction of that court, might not have been able to be heard. And if those claims cannot be heard, Mr. Herr. You keep saying might not have been, may have been. You need to tell us definitively whether these claims could have been heard. You need to make that assessment because that does fall into the race judicata analysis. Of course. So his position is that these claims could not have been heard. I use may and might because there is. Why not? Because Mrs. Simpson was the personal representative of the state. But the reason there's some uncertainty is that it is a court that has some discretion. When she was acting as power of attorney, what was her position? As an individual as a power of attorney, right? Yes, sir. She wasn't a representative. Wasn't that the issue whether or not she, in fact, had the power to sell the property? Yes, sir. So the Pennsylvania Orphan's Court does have. That was the gravamen of the litigation. So wouldn't that be the appropriate time to challenge validity and her authority to do so personally at that point as a power of attorney? If he could have brought the claims. If he could have. He was there. Wasn't that the issue? The accounting? Because did the Pennsylvania court approve the accounting? It did approve the accounting. It dismissed Harris' claims. But it is a court of limited jurisdiction. What was the accounting? Funds from, what, the sale or the distribution of the estate? Which? So both issues were in front of the Pennsylvania Orphan's Court. To the extent the question of distribution as a power of attorney, that was in a personal capacity, although by the power of attorney as such, that's personal. You say, look, that power of attorney you were acting upon was invalid because it was not properly given. It was chicanery. It was whatever you want to allege. Why wasn't that before the Pennsylvania court? Well, the Pennsylvania court has limited jurisdiction. You keep saying that, but you haven't told us the contours of limitation or the breadth of the power. So it has mandatory jurisdiction over the exercise of the power of attorney. So to the extent that, like, you would litigate in an accounting, that must be done in front of the Pennsylvania Orphan's Court. But validity of the power of attorney is certainly not within the mandatory jurisdiction of the Pennsylvania Orphan's Court. Other courts in Pennsylvania do assess the validity of the power of attorneys. And the reason there's some uncertainty as to the jurisdiction is that it does have a discretionary jurisdiction. That discretion, of course, lie with the Pennsylvania judge. And there's simply nothing here to establish that the Pennsylvania judge was willing to hear these claims. And because of the stage of litigation that we're in, we should be drawing inferences in favor of Mr. Hare. To the extent there's some dispute about what actually happened in the Pennsylvania Orphan's Court, because we have a very limited record, on remand we could pursue discovery. We could see if there's a transcript of that proceeding. We could depose the parties to see what exactly happened in that proceeding. There's simply not enough in front of this Court to establish the elements of issue preclusion. Just this week, the Supreme Court, in an opinion B&B Hardware, said that while the concept of issue preclusion is simple, its application is often difficult. And it's especially difficult in a case like this where there's uncertainty about what actually happened in the prior litigation. This Court confronted a somewhat similar case in Devaney v. Virginia Department of Transportation. The prior litigation in that case was an administrative hearing. The Court remanded the case to the district court because the court simply did not have in front of it a full account of what happened in the administrative agency. And so it was unable to rule on the defense of issue preclusion in that case. We think that this case is quite similar to Devaney. And just as in Devaney, there should be a remand to the district court to more fully develop the record. Was there privity between Simpson in her representative capacity and Simpson in her personal capacity? There may have been privity of Ms. Simpson in those two capacities, but there would not have been privity with the other defendants in this case. Privity, according to Pennsylvania laws, is limited to situations such as, like, agent and principal. We are clear that Pennsylvania law is what we apply here. Yes, because the adjudication, the judgment came through Pennsylvania, according to the full faith and credit clause, this Court must give it the same full faith and credit that Pennsylvania would itself give it. And so Pennsylvania law should apply for all the preclusion issues. Is that true, too, for intentional infliction of emotional distress? The intentional infliction of emotional distress issue, which to the extent that they claim that Mr. But for intentional infliction of emotional distress, there is a choice of law issue. They claim that Pennsylvania law applies. We think that Maryland law may be the better, is the better law to apply in this situation because this is similar to cases. The person's home is in Pennsylvania. Maryland's an ex loci state. Yes. Yes, it is. But Maryland also, when you have a tort that takes place over multiple states, you go by where the injury occurs, which is sort of the last action to complete the tort. The injury here to Mr. Hare occurred either in California or in Maryland where he eventually moved. Also, Maryland has applied Maryland law to cases where. I thought it was because they wouldn't let him. Am I misreading that, that the intentional infliction of emotional stress arose from the fact that he was in a nursing home and he couldn't get to his father and parents? Yes. They were in Pennsylvania. Well, it began when they moved his parents from Pennsylvania to a nursing home, or moved his parents from Maryland to a nursing home in Pennsylvania. Maryland has, in cases such as when a parent has taken a child out of the state, has applied Maryland law to determine the rights of the parties in such situations. Is the harm alleged that he couldn't, she was preventing him from getting to his parents? Yes. That's the harm alleged. But that harm began when she, exercising the forged power of attorney, moved Mr. Hare's parents to the nursing home in Pennsylvania where she was served on the board and had influence and was able to restrict Mr. Hare's access to his parents. I guess I'm asking, was his access restricted in Maryland? Access was restricted when he went to Pennsylvania. Again, this is a. . . How is that not what looks local? Even if Pennsylvania law applies in this case, which, you know, there are arguments that it should, the only claim they make that he fails to state a claim under Pennsylvania law is that he hasn't alleged what his specific injuries were. However, he has alleged that there are specific injuries. We think that this issue would be best determined by the district court in the first instance, because to the extent that Mr. Hare was proceeding pro se below and these arguments were being raised for the first time, the district court, perhaps in the first instance, could decide whether, for example, to grant Mr. Hare leave to amend his complaint so that he can say what those specific injuries were. Are you going to comment on the defendant's reference to the interstate of Lahr case, the Pennsylvania case, which they say resolves pretty much everything against you? Yes. I think that Lahr's case simply is stating that the proceedings in the Orphan's do get preclusive effect in the State of Pennsylvania. We do not dispute that. Anything that could have been raised. Right. So doesn't your client need to show what could have been or could not have been raised? And I don't know that you've done that. Yes. Isn't it your burden to show that these claims could not have been raised? With respect, I think it is the burden on the appellees here, because this is an affirmative defense. Right. But you're appealing, and you're saying that these claims could not have been raised. Well, you've got to tell us why, don't you? Yes. I mean, I do think that the district court should have given the burden to the appellees, and I don't think they meet that burden in this case. Right. But in order to prevail in this appeal, you've got to tell us why these claims could not have been raised in the Pennsylvania court, don't you? Yes. And because the Pennsylvania court is a court of limited jurisdiction, it is an equity court, it would not have been. Right. But it deals with powers of attorney. It deals with duress, I would think. It deals with fraud related to wills and related to execution of estates. So why couldn't it have heard these? The issue of this is probably best characterized as the claim in that court by the estate, and that Mr. Hare, in his capacity, could not have brought these claims. Only Ms. Simpson could have brought these claims because she was the personal representative of the estate. The Pennsylvania Orphanage Court might not have wanted to hear the claim because not all parties were able to be brought in front of that court. But that's might not. Again, you can't do might and you can't do may. You see? Yes. The difficulty is that it is a court of discretionary jurisdiction, and because this is an affirmative defense, the burden should rest on the defendants below to establish that these claims could have been heard and that Hare had a full and fair opportunity to litigate this claim. That is one of the elements of issue preclusion under Pennsylvania law. Does the Pennsylvania law hold that the issue of precluding, to be issue precluding, it has to have been actually litigated? Yes. And so for issue preclusion to apply, it would have to be actually litigated. And it does not, there's nothing before this court that establishes that it was actually litigated. But doesn't Lair say also whether it could have been raised? I think it is referring to what would be claim preclusion in that case. If you look, that was the specific issue in that case was, I believe, claim preclusion. And claim preclusion does apply to claims. As well as questions which could have been raised. If you look at the Lair case, it was an instance where they, where it had been established that these claims could have been raised. But I don't think that it goes, Lair sets up something beyond, you know, a sort of issue preclusion that doesn't require the claims to be fully and fairly litigated. The point that issue precluding, preclusion under Pennsylvania law is that it must be actually litigated. But as for claim preclusion, it can be claims that are raised. But the problem here is that the parties aren't the same. The parties aren't the same in that Mr. Hare could not have raised these claims. And also that the causes of action, which is another element of claim preclusion, are not the same. It is a different question whether Ms. Hare exercised her duties as power of attorney correctly. And whether she had those duties in the first place under a valid, non-forged power of attorney. But I would like to reserve the rest of my time for. I've got a problem with this intentional inflection and emotional distress. Because that's, you just don't have enough of that. You don't maintain otherwise. I know you say so. But really, when you look at it, you don't have enough of that, do you? Mr. Hare has enough to state a claim. Whether he has enough to provide summary judgment is a question for a later point of this litigation. Thank you. Mr. Wallace? Good morning, Your Honors, and may it please the Court. My name is Leo Wallace, and I represent Shirley Simpson, Gilbert Malone, and Paula Gemma. The appellate concluded his opening brief with the statement that Mr. Hare deserves more than the one-line disposition that he received from the lower court. On the contrary, considering the whole history of this case, Mr. Hare received exactly what he deserved. Now, I realize this is a very strong statement, but to realize the history of this case. It's about the claim preclusion and issue preclusion, which is the basis the Court relied upon here. Does it meet? Which do you rely upon? I take it both? Issue preclusion, Your Honor, because if you look at the Hare's claims rise and fall on the forgery of the power of attorney. If the power of attorney is a valid power of attorney, then all of his claims fail. Mr. Hare had the opportunity. Are all of his claims predicated on the power of attorney? Yes, they are. Because if the power of attorney is valid, there is no conspiracy. In Pennsylvania, we touched upon Pennsylvania law, and I heard many times he might have, he might not have brought these cases in Pennsylvania. 20 PACSA 71122 grants to the Orphan's Court jurisdiction over all matters pertaining to the exercises of a power of attorney by the agents. Now, Mr. Hare filed his objections in eight months after he received his expert's report opining that this document was forged. So my client, upon Mr. Hare's motion for a petition for accounting, he didn't have to bring this cause of action to Pennsylvania. He had already brought this cause of action in the Baltimore County Circuit Court. And I was quite surprised when he did bring it to the Pennsylvania court. We had discussions with counsel why he brought it to the Pennsylvania court, because it was pending in Baltimore. But because the case in the Maryland court did hold that it was pending in Baltimore, that because the matter was tried and brought to adjudication in Pennsylvania, the raised judicata applied. He brought the exact same claim to the Baltimore County Circuit Court months after the Pennsylvania court adjudicated their case. We raised the issue of – Are you saying independently there's a basis for issue of preclusion under the Maryland, because of Maryland case? You didn't seem to argue that in your brief. It was pointed out in our brief. We included the opinion of the Court of Special Appeals from Maryland, which upheld the Baltimore County Circuit Court's opinion that all matters were barred by issue of preclusion or raised judicata. Simply put – To the Pennsylvania case, do you agree that at least as for issue of preclusion, that on the Pennsylvania law the issue must have been actually litigated? Must have been or could have been litigated. That's the key. You bring all claims with the relative set of facts to the court that day. He was filing his objections to the accounting. That was his time to bring up the matter of the forgery. He knew eight months before that when he filed his petition – In Pennsylvania, he could have brought it up. He could have and should have brought it up. Does he have that authority? Would he have that capacity to do so? Absolutely he has that capacity to do so. He – again, Pennsylvania law gives all matters containing the power of attorney. And as a side note to this, you asked does he have the power to do that. Does the Pennsylvania Orphan's Court have the authority to decide upon the forgery? In the will contest in this case, which was also brought by Mr. Hare, he appeared in court that day and tried the very same issue. He brought his expert witness to the Pennsylvania Orphan's Court to challenge the validity of the will. Well, he consented to – he knew that he could bring that in that court but did not. And again, looking at the history of this case, I do believe this is purposely what Mr. Hare was doing. He has dragged this out with last-minute tactics for the past six years in this court, in the Baltimore County Circuit Court, in the California Eastern District Court, in the Pennsylvania Court. It has just gone on forever and it was just a matter of gamesmanship on his behalf, I believe, not to include that in his objections to the accounting. I have nothing further to say. I'd be glad to entertain any further questions. Well, since you were engaged in a bit of opining as to what his motive might be, I guess, what game would there be to hold back on the silver bullet of forgery? Can you – I know it's something – Yes, since we're opining on here, yes, to cause my client more heartache. Again, he has fired his attorneys at the very moment of trial in these cases. He has extended litigation as much as he can by last-minute tactics, and he had this report there in his hand and did not bring it that day. He simply should have brought it. When he filed his objections, his objections were voluminous. He objected so far as to a garden hose that was distributed during Mrs. Simpson's exercise of her power of attorney. If he was going to be so specific as to a garden hose, why didn't he bring the issue of forgery up when he should have brought it up to have the Pennsylvania court decide it instead of holding it in his back pocket until the Pennsylvania court decided against him and then to bring the issue up again elsewhere in Baltimore County, in California, and now in this court? Let me go back to the business of could have been litigated. There's a case called County of Berks, Pennsylvania law. That case, as I understand, states the issue or issues must have been actually litigated and determined by a valid final judgment. Are you familiar with that case? I am. Tell me how does that indicate it could have been litigated? The matter was before the court. Again, they have to have a case. I understand that. I'm just reading the case law here. In Pennsylvania law, we are bound by case law in Pennsylvania, right? That's correct. It makes sense, at least from the issue preclusion issue here. You say that the power of attorney here, the court determined this validity, but it only mentions it. Does it, in fact, litigate that or state that it is a legitimate? Was that litigated? No, it was not litigated. Isn't that the issue of whether the power of attorney was actually valid? Let's follow this to its natural conclusion. I want to make sure we get this point. I don't want you to be articulated, but I want to make sure I'm not missing this point, at least from when I read the Pennsylvania. It simply mentions it. It does not indicate they are litigating the validity of this power of attorney as well as it's been forged. That's correct. No, nothing on the record. And that is the issue in this case. But let's follow that to its natural conclusion. What if plaintiffs held back evidence? Let's go back to the Cedar Burge case, where it says the issues of issues must have been actually litigated and determined by a valid final judgment. Now, if that language is wrong, I want you to look at that case and tell me what it says. But Dr. Roff also says that the matters that should have or could have been. Which case are you? Dr. Roff. And I don't have the site here in front of me, and I do apologize. It's a federal case. It says all issues that could have or should have been. I'm quoting you Pennsylvania law from the Pennsylvania Supreme Court, and you're telling me a federal case is going to tell me what the law is in Pennsylvania? Allow me to say this much. Let's follow that argument to its logical conclusion. I want to clarify that point, because if that case is controlling, I would need you to tell me how it's controlling. I'm not trying to be argumentative. I know you're not. I'm just trying to determine what is the law of Pennsylvania. And I've just given you a case from the Pennsylvania Supreme Court, and you tell me there's a federal court that says something different. And I don't think you're going to maintain that a federal court can tell us what the law is in Pennsylvania over the Pennsylvania Supreme Court. Pennsylvania. Give me a Pennsylvania Supreme Court case or something from the legislature or something from Pennsylvania that tells me what the law is that's different from what this case articulates. And all I can give you is the Lair case, which says that all issues contained there and all questions which could have been raised in the state should be raised at the Orphan's Court. This could have been raised and should have been raised at the Orphan's Court level. Could have been raised in the instance of the validity of the power of attorney? Yes. By? Here. Who was not at, was he a party? Yes, he was a party. And he could have raised it, but it is the. I'm just trying to understand how it all works out, that if it's to be actually litigated, even if it could be raised, it still has to be actually litigated. I don't, I'm confused on that. That was, it was his time to litigate the issue when was he's filing his objections. The whole purpose of the accounting of Pennsylvania is to look at the power of attorney, to look at the actions by the agent for her principal. And he, the time to object was when he filed his objections. I got a case. This kind of bird case is 1996. This layer case is 1969. And I don't know what Pennsylvania Supreme Court is saying here, but I got to believe it meant what it said in 1996 on this case. I mean, I don't want to be confused, but it's confusing if we're going to get this could have been litigated basis, litigated on issue preclusion. When the Supreme Court has said it very clearly. I don't know if it just misread his own law or changed it or whatever it did. But the later pronouncement of this is there's none of this could have been litigated. I don't know what the issue is and stuff, except for 1969. Do you find anything else that says that's all? That's what I have to offer today is that he could have been, should have brought it that way that it had to be actually litigated. You don't, you don't prevail on that. Please repeat the question. If it had to have been litigated, this issue had to been litigated. We are clear that it wasn't in fact litigated. We are clear. Yes. You would have to have the basis that it could have been litigated. To get to where your point is. Yes. And on the claim preclusion, don't the parties have to be the same? This is more or less issue preclusion. Again, if he would have. So you're not, you're not resting your case on claim preclusion here. On issue preclusion. On the validity of the will. As I said earlier, all of his claims rise and fall on whether the will has been forged. So, but, but insofar, if we were to reach claim preclusion, it wouldn't apply because the parties were not the same. No, the parties are not the same. And at this point, I hasten to add, the parties have always changed through every litigation. He's added in dismissed parties through the four cases. So, again, I believe it was gamesmanship on his part by simply doing this. I understand that, but nonetheless, you must have the same parties in order to get claim preclusion. Regardless of the gamesmanship, you've got to have the same party. Mr. Wallace, I have a question. Before I ask you this question, I want you to do this for me. I want you to step back a little bit because it sounds like . . . I don't mean literally. I mean in terms of . . . I'm sorry. In the metaphysical standpoint. Step back a little bit because I can sense there's a lot of frustration. You've been in this case, obviously, with your clients. I just want you to . . . I think this is the toughest part of the case for me, and I think part of what Judge Wynn is saying. It may be frustrating, but it looks like . . . You tell me where I'm wrong. It looks like Mr. Harris has a problem with two levels. One, this power of attorney in the in vivo relationship with their parent. Then there's relationship of the decedent being the representative of the estate. It looks like at the point in York, the litigation was . . . Listen, this will is fraudulent. It was undue influence and all of this, and I'm attacking it. All right, that's the litigation, and in that litigation . . . Matter of fact, I want an accounting of what she did as the representative of this estate, and then he filed his objections. He lost. This is how I question you, but isn't . . . Even though it's awkward, it's sort of counterintuitive, it's frustrating, but isn't it another question now, having lost that, to say, wait a minute, let's go back to the power of attorney here. I want to question that now, because I have proof that that was a forged signature. Is that a fair representation, that even though it's awkward, that the Pennsylvania court really dealt with just the question of the accounting as the representative of the estate, and the objections go to how . . . Like you said, even down to a garden hose, blah, blah, blah, blah, blah, you lost. But isn't there still another question as to whether or not the power of attorney was forged, and that was not litigated? That's the question. You're quite correct on that, but I'm sorry that my frustration comes through the way it has this morning. I didn't mean that to be a pejorative. I meant that to be helping you sort of take . . . But it has been quite a frustrating case, having been with us for six years. I know, I know. But the issue is Mr. Hare had all the information he needed at the time when he filed his objections. You're doing that again, though. You've already done that. I want you to rehearse trauma. I want you to answer the question of whether or not isn't that another tier of litigation, that is the question of the power of attorney, separate and apart from everything that was done as the administratrix, as they would say, of the estate. I do not believe it is. His objections touched on the power of attorney, did it not? Exactly. Everything that happened within the power of attorney, those objections were aimed towards that. And likewise, when he went to the Baltimore County Circuit Court, again, it was . . . He brought them both there, though. He brought the accounting, and he brought the issue of forgery. He was ready to proceed on the forgery issue at the Baltimore County Circuit Court. And following a very similar argument that we're having today, Judge Cox dismissed the case because of res judicata. It then eventually went to the Court of Special Appeals in Maryland. And again, that court upheld her ruling that those claims, including forgery, should have been brought at the trial level. Who are you representing here today? I represent Shirley Simpson. I represent Gilbert Malone. And I represent Paula Gemma. Mr. Malone is the attorney who drafted the power of attorney. Paula Gemma is the notary who witnessed and also stamped the power of attorney. Who's representing Mr. Burns? My colleague, Mr. Carpook. And at this time, I will yield my time to Mr. . . . Just one quick question. This just puzzles me. You haven't done real estate law. There was a deed in this case that gave, that reserved a life estate to the parents and reserved also for them the right to sell the property entirely? That's correct, Your Honor. Maryland is one of the few states that allow that. Yes, Maryland is one of the few states that allow you to issue a life estate but still retain the powers to sell the property. That doesn't sound like you're getting very much. You can alienate the property. I don't know what you gave. I guess it's more like a will. But it was a very valid deed, and that's something that's unique to Maryland. Thank you for your time. Mr. Carpook. Good morning, Your Honor. May it please the Court. My name is Russell Carpook, and I represent the appellee Barbara Burns. Although I believe there are many innocent victims in this litigation, she is surely the innocent victim. The only allegations against Ms. Burns. She's a realtor. She's a realtor. All she did. She had this power of attorney that wanted to allow her to sell, so nobody told her anything. It doesn't look like she did anything wrong. She didn't do anything wrong, Your Honor. She just presented a contract to a buyer. They executed it. The seller executed it through the power of attorney. It went to closing. She got her fee. The money went to Ms. Simpson, and now she's spent all of her fee on me. It's a sad case that she's been dragged into. I'm sorry? You could have done this out of the goodness of your heart. I could have, Your Honor. But I didn't know her at the time. Had I known her at the time, I might have been inclined to do so. She's a wonderful lady. But that's all that's alleged against her. She can't be part of an intentional infliction of emotional distress because, at one point, he's alleging that she didn't consult with the Hares to see if they had actually executed the power of attorney. There's no allegation that she has a legal duty to do that. If there was, the power of attorneys would be useless. But then he's alleging that she conspired to inflict emotional distress by preventing him from seeing them, but he's saying she had no contact with them. So, you know, it's a contradiction there in his actual pleadings. At the very least, he has filled a state of claim against Ms. Burns, which relief can be granted, and the court properly granted a 12B6 motion to dismiss as to Ms. Burns. If, in fact, there are sufficient allegations that the doctrine of issue preclusion applies, and in my case it would be collateral estoppel, I believe that an issue that could have been raised in the Pennsylvania courts. Those little things they do in Maryland, too, with res judicata and issue preclusion is collateral estoppel. They sort of mill those together. One of our other uniquenesses, yes, Your Honor. But this court has de novo authority to dismiss it on the basis of collateral estoppel as opposed to res judicata if it applies. And clearly in my client's case it did because, as has been pointed out through many minutes of this argument, the Orphans Court had to look at the power of attorney, and Mr. Hare was present and could have raised its validity and didn't. And once they did so under the collateral estoppel doctrine, that's a final judgment on a matter that was before the court. Your main argument is the sufficiency. Yes. That's very strong. Yes, Your Honor. I don't see a reason for you to get into this. I mean, you can. I don't know why you would get in that morass. You've got a pretty strong argument on that. I would agree, Your Honor, and I feel guilty taking my client's money being here today, but I just was afraid you might have some questions that would affect my client specifically. And if you don't, I'd be more than happy to conclude my argument. All right. Thank you. Thank you very much. It's been a pleasure to be before you. Good to have you here. Mr. Powell, you have time reserved. You do agree that there's not much here in terms of a claim against Ms. Burns. If there is not enough against Mrs. Burns, this perhaps might be a better issue for the district court, which may grant Mr. Hare leave to amend his complaint to have more specific factual allegations to the extent that the intentional emotional deflect. You've got to have more than the allegation, I mean, at this point, to be able to get her there. Right. Yes, sir. So you're saying what? I'm saying Mr. Hare may need leave to amend to add more specific allegations against Ms. Burns, but this would be something. But what you have now before us is not sufficient. I'm not going to concede that specific point, but, again, the district court did not rule on this issue and it might be more appropriate for them. But just to back up for a second, what is Mr. Hare asking for in this case? He is simply asking for the right that all plaintiffs have, which is to pursue discovery in order to defeat the affirmative defenses raised against him. That's not true. All plaintiffs are not entitled to discovery. Some are properly dismissed 12b-6. Yes, sir, but the normal course, as this Court has said again and again, is that affirmative defenses be addressed in either summary judgment or by a jury. The Supreme Court is making it more and more difficult to properly plead, the Twombly and Iqbal and those, so your broad statement is dwindling as we speak. Yes, sir, but the issue here isn't whether he stated a claim. It's whether this affirmative defense defeats his claim. And an affirmative defense is ---- Did the client have information that it was a forged power of attorney when he was in Pennsylvania, before he got to Pennsylvania? Yes or no? He did have that information while he was still litigating within the Pennsylvania court. However, I ---- Why would he play games? It seems like, no, I don't want to say that. Why would he do that? I don't understand that. Well, there's a question. There's a difference between a capacity to raise objections, especially when you're in an equitable court and you have something like an accounting, and the capacity to bring suit. And ---- What was his incapacity? That he was not the personal representative of the estate. Something like an accounting which the Orphan's Court has to approve all accountings is something that he could bring an objection to, just as he could bring objections to the will. But this separate tort that the power of attorney had been forged is not within the ---- It's certainly not within the mandatory jurisdiction of the Pennsylvania Orphan's Court. And ---- So you're saying none of his objections touched the question of forgery? They did not. I think the appellees recognize, though it's not fully in this record, that Mr. Hare did not bring the forgery of the power of attorney claim in the Pennsylvania Orphan's Court. But that was strategic, wasn't it? You know, this is probably a better question for discovery as to why he didn't bring those claims in the Pennsylvania Orphan's Court. But, again, there is a difference. Well, listen, if we had to try all of these issues and sub-issues, then really you would make race judicata and a claim, an issue of preclusion, have no teeth because you may as well try the case now. Because when you say we've got to go back now and find the strategy, shouldn't you know whether or not he could bring those in the court? It is our position that he could not. There is discretionary jurisdiction in the Pennsylvania Orphan's Court. But, again, at this stage of litigation, the burden of proving an affirmative defense lies on the appellees. And they haven't presented anything, any case law that Pennsylvania Orphan's Court could hear a claim from Mr. Hare in his personal capacity alleging the forged power of attorney. There is a difference. Perhaps the only thing they brought was common sense. And that's still a commodity, I hope, in jurisprudence. If you have forgery and the question is, well, how did the person distribute it in the state? And you say, wait a minute, excuse me, Your Honor, before we get to how they distributed it, there's evidence right here that it was forged. And you mean the court is going to say, oh, excuse me, I don't want to know whether it's forged or not. That's not important. Go on with your distribution. I just can't imagine that. Isn't that belied common sense? Well, Mr. Hare is not bringing claims in the Pennsylvania Orphan's Court. He's raising objections to the matters that are within its mandatory jurisdiction. So he objects to the accounting. Don't you think that's a pretty good objection, his fraud? Again, there's nothing in this record that indicates that he could have brought this claim in the Pennsylvania Orphan's Court. This is affirmative defense is the burden let rest on the defendants to prove those affirmative defenses. I'll mention the Doctroff case they bring up briefly. In the Doctroff case, it was indisputed that in the prior litigation, the defendant could have brought the claims. That is not present here. There is common sense. This is the 1206 motion. We should be drawing inferences in favor of Mr. Hare. Judge Motz has at his discretion the ability to limit discovery. There's no need for this case to go down necessarily and extend over years and years and years. We're simply asking for a hearing in which Mr. Hare may take a limited discovery and be able to refute these affirmative defenses that were raised by the appellees. Mr. Hare has evidence that the power of attorney for his father had been forged. All he's asking is that this claim, which has not been heard before, be heard. For the foregoing reasons, we ask you to reverse the district. Has your client filed a list pendant against the property in Pennsylvania? I mean Maryland, I mean. I see my time is up. May I answer your question? I'm the lead judge. I think you're okay. The property in Pennsylvania was sold. He hasn't filed any action. It was sold while his father was still alive. It's been several years. Well, you said you still could. Okay, I say okay. No kind of claim in terms of. Because wouldn't that go back up the chain and say that that was an improper sale? You try to do something or what? He has not brought those claims to my knowledge. You're not seeking to go against the property. You're seeking to go against the estate. Yes. All right. Any further questions? Thank you. Thank you so much. And I wanted to note that you were court appointed. And I wanted to say that the Wahoos are well acquitted here today. Great job. And we appreciate your service. It means a great deal to this court. And we appreciate it very much. And thank the professor and the university. And your name, sir? Steven Bright. No, no, no. I mean the other. Brian Walters. Brian Walters. Co-counselor as well. Thank you so much. And, of course, counsel for the Appalese. Thank you also. We will come down. We counsel and proceed to our last case.
judges: Roger L. Gregory, Barbara Milano Keenan, James A. Wynn, Jr.